135 N. Y. 190, 31 N. E. 1032; Matter of Johnston et al., 144 N. Y. 563–565, 39 N. E. 643.

It is important to note that the only objections to the evidence were that it was "incompetent, and not the proper measure of damages." It was competent to show what the plaintiff realized, for in that way the extent of his loss would be ascertained. The net sum realized by him was the proper measure of damages, providing the transaction by the commission merchant was honest, and he obtained all that the potatoes were fairly worth, and made no overcharge for his services. If the claim had been made that the merchant did not realize a fair price, or did not account honestly, or that there was a market price for frozen potatoes, these objections might have been met and explained. There was no objection to the mode of proof, and no contradictory evidence given, and in all the circumstances we think there was a proper basis for the damages awarded.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except WILLIAMS, J., who dissents, and NASH, J., not voting.

────────

(112 App. Div. 609)

BLAIR v. UTICA & M. V. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

RELEASE—VALIDITY—INSTRUCTIONS—EVIDENCE.

> Where evidence showed that a release of claims for personal injuries was signed after considerable discussion as to the amount to be paid, and ther was no excitement, and no threats were indulged in, and the signer had full opportunity to read the instrument, an instruction that, if there was fraud or imposition or undue influence in obtaining the release, it would not bar a recovery, was error, as not based on the evidence.

Appeal from Trial Term, Oneida County.

Action by Della A. Blair against the Utica & Mohawk Valley Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Warnick J. Kernan, for appellant.
Frederick B. Adams, for respondent.

SPRING, J. The plaintiff claims to have been injured on the 11th day of August, 1903, when stepping from defendant's car on Genesee street at its intersection with Jewett Place, in the city of Utica. She testified that she signaled the conductor to stop the car, and it was stopped, and, as she attempted to alight, it was started again, and she was thrown to the pavement, sustaining injuries. While there is considerable conflict in the testimony, we are not disposed to hold on this branch of the case that the verdict is contrary to the evidence. On the 17th of September Mr. Hamilton, the claim agent of the defendant, called at the house where the plaintiff was boarding, to negotiate a settlement with her, and they arranged to meet at her room that evening.

He called about 8 o'clock, and the plaintiff, who was an unmarried lady of 25 years of age, and Miss Bishop, her roommate, were present. Mr. Hamilton made an offer of $50, which was not accepted, but after considerable bantering they agreed upon the sum of $90. The plaintiff and Miss Bishop testified that Mr. Hamilton agreed also to pay the expenses of the physician who had attended the plaintiff, and also the expenses incurred at the hospital, where she had been cared for about two weeks. Hamilton testified that he promised to reimburse her for the hospital charge. There is no great importance to this testimony, for the defendant has not been presented with or requested to pay either of these items. A release in full under seal was executed by the plaintiff and witnessed by her friend, Miss Bishop, and the $90 paid to her. A week later she returned the money to the defendant, with a notice that she canceled the release; but the defendant declined to receive the money, and advised her that it was on deposit, subject to her order. The plaintiff testified that at the time of the execution of the release she was nervous, and Miss Bishop confirms this statement, and further testified that she herself was also in the same mental condition. Miss Bishop testified:

"I had full opportunity to read this release; I had it in my hands. Mr. Hamilton didn't say anything to me about not reading it. He didn't make any pretense to keep me from reading it. I wouldn't say that Miss Blair didn't have this instrument in her hands. I won't say that she didn't have opportunity enough to read it. I won't swear that Mr. Hamilton did not read this release. I will not swear that Mr. Hamilton did not read this release exactly as it reads to-day."

There is no pretense that Mr. Hamilton tried to prevent either the plaintiff or her friend from reading this release, or that he did not read it aloud, as testified to by him. Beyond that, the parties testified that the haggling over the price continued for some time, and, as a result of it, the agreement to accept $90 was reached. The release simply evidences the agreement. It was fully understood that the cause of action was to be satisfied upon the payment of this sum, except as to the doctor's bill and the account at the hospital, which is unimportant, for the action is not to reform the original release, or to recover on a collateral independent agreement.

The trial judge instructed the jury that:

"If this defendant was guilty of a fraud or imposition or undue influence whereby the release in question was obtained from this plaintiff, then your verdict in this case must be for the plaintiff."

Again, he stated to the jury that the plaintiff claimed the "release was a fraud"; and further, that:

"It was an imposition, due to undue influence and fraudulent design; a fraudulent attempt to obtain from her, her signature to the instrument in question. If on this testimony you believe that that instrument was signed and executed by her through undue influence, or fraud, or imposition, and that it was not her real contract, then you will find on that question that this release is not a bar to a recovery here if the plaintiff is right."

There was no evidence justifying the inference that the release was obtained through fraud, or that any compulsion or undue influence was exerted on the plaintiff to induce the execution of the release. The

claim agent met her by appointment. She knew the object of his errand. She was about the room and with her roommate. There was no excitement; no threats were indulged in; no fear was manifested. She signed the release voluntarily, appreciating its contents, and expecting that the money received was in payment of her claim for the injuries she claimed to have suffered. The settlement may have been unfortunate for her. She possibly ought to have received a greater sum. Courts, however, will not interfere to annul the compromise of a pending litigation evidenced by a sealed instrument, unless convinced that an unfair advantage has been taken by one party over the other. The mere fact that, in the light of subsequent events, one party has been benefited at the expense or detriment of the other is not sufficient to nullify an adjustment made by the parties willingly and knowingly. Before the plaintiff can recover, she must be relieved from the effect of this release. Szymanski v. Chapman, 45 App. Div. 369, 61 N. Y. Supp. 310. Undoubtedly, the plaintiff may be permitted to impeach the instrument. Fleming v. Brooklyn Heights R. R. Co., 95 App. Div. 110, 88 N. Y. Supp. 732; Grockie v. Hirshfield, 50 App. Div. 87, 63 N. Y. Supp. 365. Presumptively it is valid, and there was not sufficient proof in this case to warrant the jury in finding that the settlement was not honestly made, and the terms of the release fairly comprehended.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and a new trial granted, with costs to appellant to abide the event upon questions of law only. All concur.